# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LINDA DILLARD, | : | |
| Plaintiff, | : | |
| | | Case No. 3:15cv00020 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

Plaintiff Linda A. Dillard applied for Supplemental Security Income on September 2, 2011.  She asserted that she could no longer work a substantial paid job as of March 1, 2000 due to her health problems.  Her application, medical records, and other evidence proceeded to a hearing before Administrative Law Judge (ALJ) David A. Redmond who later issued a written decision.  The result of his decision was the denial of Plaintiff's application based on his central conclusion that Plaintiff was not under a "disability" as defined in the Social Security Act.  Plaintiff brings the present case challenging ALJ Redmond's non-disability decision.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Doc. #7), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Redmond's non-disability decision.

## II.  Background

### A.  Plaintiff's Vocational Profile and Testimony

On the date Plaintiff applied for Supplemental Security Income, she was 51 years old. She was therefore considered a person "closely approaching advanced age" under Social Security regulations. She has a "limited" education, as defined in the regulations, and she lacks past relevant work experience.

During the ALJ's hearing, Plaintiff acknowledged that she had previously received Supplemental Security Income. She stopped receiving it when she went to prison for identity fraud. She was in prison for 18 months, which took a toll on her health problems and worsened her conditions. (Doc. #6, *PageID* #110). She has bipolar disorder. She cries a lot and cannot concentrate or think for too long. Her memory is poor. She will often say things to her daughter, then turn around and say the same thing again. Her daughter tells her when she has these forgetful moments.

Plaintiff testified that she has severe headaches due to a brain tumor that was

previously removed. *Id*. at 107. She has scoliosis in her back that makes it difficult for her lift much weight or to sit or stand for long periods of time. Her back will start aching if she sits for 30 minutes. She was told in therapy that the most she could stand was 20 to 25 minutes. She experiences a lot of tingling and her toes get numb when she stands too long. She can lift 5 or 10 pounds without pain. *Id*. at 110.

 Plaintiff explained that she used to be a great cook but can't cook much now. Her daughter cooks her meals for her. Her brother helps her with grocery shopping and takes her places. During a typical day, Plaintiff tries to do housework or dishes, but it hurts her "so bad." *Id*. at 108. She sometimes watches TV, but she cannot concentrate long enough to play games. She tries to walk because it helps her back pain. When she goes for a walk, she usually needs to be accompanied by her daughter. One day, when she was walking alone, she heard voices telling her to jump off the bridge, and she was tempted to do so. *Id*. at 109. She went to a nearby hospital for help. Her stress level is "terrible"; she "cannot handle any kind of stress." *Id*. at 111. She had difficulty in the past with alcohol and regularly attends AA meetings. Despite her sobriety, she still experiences psychological symptoms. Plaintiff testified that she takes 2 prescription medications every night so she can rest and to stop her from sleepwalking. She explained, "In the middle of the night, I get up, and I cause fires in the apartment if I have to be left alone there. But ..., I have to take those medicines to help me rest well and avoid the voices that I hear in my head." *Id*. at 106-07.

B. **Additional Evidence**

In October 2011, psychologist Dr. Halmi examined and evaluated Plaintiff at the request of the Ohio Division of Disability Determinations. (Doc. #6, *PageID* #s 815-23). He diagnosed Plaintiff with Mood Disorder NOS (not otherwise specified diagnostically) and Psychotic Disorder NOS, and Alcohol Dependence. He noted, "According to Ms. Dillard and her uncle, Ms. Dillard's mood affects her ability to get along with others, her sleep, self esteem, and ability to engage in even simple tasks. During this evaluations [sic], she could not perform such simple tasks as repeating three digits forward and two backward." *Id*. Dr. Halmi believed that Plaintiff's prognosis was poor due to the "chronicity of her symptoms ...." *Id*. at 821.

In 4 areas of mental-work functionng, Dr. Halmi provided the following opinions:

1.  Plaintiff was "not capable of understanding, remembering, and carrying out simple instructions." *Id*. at 822.

2.  Plaintiff "is unable to maintain attention, concentration, persistence, and pace to perform even simple tasks." *Id*. at 323.

3.  Plaintiff "would have significant problems responding appropriately to supervision and to coworkers in a work setting." *Id*.

4.  Plaintiff could not effectively manage difficult people. She would respond to criticism with withdrawal. She is not capable of meeting deadlines, even in the completion of simple, repetitive tasks. She does not have cognitive capacity to solve unforseen, novel problems in a work setting. *Id*.

In his summary, Dr. Halmi reported that although she was cooperative during the examination, "she gave vague responses and did not appear to put forth a valid effort on

the mental status examination." *Id*. at 822. Dr. Halmi concluded, "For these reasons, I opine the results of the evaluation are not valid." *Id*.

Psychologist Dr. Semmelman reviewed the record in November 2011. She found Plaintiff's ability to respond appropriately to changes in the work setting was moderately limited. Dr. Semmelman further opined that Plaintiff was not significantly impaired in 3 remaining areas of mental adaptation abilities. (Doc. # 6, *PageID* #128).

Psychologist Dr. Rabold reviewed the record in April 2012 and assessed Plaintiff's mental-work abilities in 4 areas. Dr. Rabold concluded that Plaintiff was mildly restricted in her activities of daily living; she had moderate difficulties in maintaining social functioning; she had moderate difficulties in maintaining concentration, persistence, or pace; and she had not experienced episodes of decompensation of extended duration.

The administrative record contains additional medical records and medical source opinions. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because the ALJ's decision and Plaintiff's Memoranda accurately identify the relevant records with citations to evidence. The Commissioner's counsel, moreover, refers to the ALJ's discussion of the evidence and addresses the relevant facts during the course of his Memorandum in Opposition.

### III. "Disability" Defined and ALJ Redmond's Decision

The Social Security Administration provides Supplemental Security Income to

indigent individuals, subject to several eligibility requirements. Chief among these is the "disability" requirement. To receive Supplemental Security Income an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who have a medically determinable physical or mental impairment that is severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

As noted previously, it fell to ALJ Redmond to evaluate the evidence connected to Plaintiff's application for Supplemental Security Income. He did so by considering each of the 5 sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920(a)(4). He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since her application date (September 2, 2011).
>
> Step 2: She has the severe impairments of scoliosis; mood disorder, NOS; and psychotic disorder.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do in a work setting despite her impairments, *see Howard v. Comm of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work[2] subject to

---

[2] Under the regulations, "light work" requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. § 416.967(b).

            the following limitations: she must be able to get off her feet for 15 minutes per hour; she is limited to unskilled work with no more than occasional personal contacts and no production quotas.

Step 4:       She has no past relevant work.

Step 5:       She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 88-95). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.

## IV. <u>Judicial Review</u>

The Social Security Administration provides Supplemental Security Income to indigent individuals subject to several eligibility requirements. Chief among these requires an applicant to be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[3] 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406

---

[3] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

(6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.    **Discussion**

    A.    **Medical Source Opinions**

Plaintiff contends that the ALJ failed to follow the Social Security Administration's own regulations when giving "little weight" to Dr. Halmi's opinions about her mental-work abilities. Plaintiff reasons, in part, that the ALJ misconstrued Dr. Halmi's report by finding it "invalid" in its entirety based on Dr. Halmi's indication that Plaintiff may have exaggerated her psychological symptoms.

The Commissioner asserts that the ALJ considered the record as a whole and properly followed the regulations in giving little weight to Dr. Halmi's opinions. The Commissioner further asserts that the ALJ's reasons for discounting Dr. Halmi's opinions were sound and supported by the medical record.

Social Security Regulations require ALJs to weigh medical source opinions by first considering their status on a relationship hierarchy. At its apex, the hierarchy requires ALJs to "[g]enerally, ... give more weight to opinions from your [the applicant's] treating sources ...." 20 C.F.R. §416.927(c)(2). One step down on the hierarchy finds the opinions of examining physicians and psychologists. The Regulations state, "Generally, we give more weight to the opinion of a source who has examined you [the applicant] than to the opinion of a source who has not examined you." *Id*. at §416.927(c)(1). Resting on the bottom of the hierarchy are the opinions of non-examining physicians and psychologists, *id.* at §416.927(e), including state-agency physicians and psychologists. Despite their

9

lowly hierarchical position, state agency physicians and psychologists are considered "experts in the Social Security disability programs ...," and their opinions "may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6p, 1996 WL 374180, *2, *3 (July 6, 1996).

The legal criteria established by the hierarchy effects "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians and psychologists who do not have at treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." Soc. Sec. R. 96-6p, 1996 WL 374180, *2; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). The regulations characterize these stricter standards in a list of factors, including "supportability," "consistency," "specialization," and "other factors." 20 C.F.R. §§ 416.927(c)(3)-(6).

In the present case, the ALJ placed little weight on Dr. Halmi's opinions at Steps 2, 3, and 4 of the sequential evaluation mainly because Dr. Halmi himself believed that Plaintiff "was exaggerating her symptoms and that the results of the mental status exam were invalid." (Doc. #6, *PageID* #92). The parties' disagreement over this part of the ALJ's decision can be framed as alternating possibilities: Does substantial evidence support the ALJ's view of Dr. Halmi's report or is Plaintiff correct that the ALJ exaggerated and misconstrued Dr. Halmi's report?

The language and substance of Dr. Halmi's report support the ALJ's view. Although Dr. Halmi did not specifically find that Plaintiff was exaggerating her psychological symptoms, he repeatedly identified that possibility. Dr. Halmi also observed that Plaintiff over endorsed her psychopathology. These concerns appear in several areas of Dr. Halmi's report. First, his discussion of Plaintiff's mental status examination begins with his description of Plaintiff's appearance and behavior. Dr. Halmi noted in part:

> [Plaintiff] sat with a tense posture at the edge of her seat. She diverted eye contact. Her facial expressions were generally strained. She was restless and fidgety. She rocked back and forth in her chair. She was cooperate in all phases of the evaluation. She maintained a business-like demeanor. She did not manifest any excessive pain behavior. *She may have exaggerated her signs of psychopathology*. She was not impulsive....

(Doc. #6, *PageID* #818-19) (italics added). Dr. Halmi next addressed Plaintiff's flow of conversation and thought, observing, "At times she was vague...." *Id*. at 819. Later in Dr. Halmi's "Reliability Estimate," he wrote:

> Ms. Dillard may have been exaggerating psychological symptoms. She appeared to have significant psychological problems, but *she over endorsed psychopathology and appeared to be exaggerating psychological signs*. I highly recommended that her mental health records be reviewed. For these reasons, I opine the results of the evaluation are tenuous.

*Id*. at 821-22 (italics added). In his summary and conclusions, Dr. Halmi explained in part:

> [Plaintiff] was interviewed and administered a mental status examination. Although she was cooperative, she gave vague responses and did not appear to put forth a valid effort on the mental status examination. For these reasons, I opine the results of the evaluation are not valid....

*Id*. at 822.

11

Based on Dr. Halmi's ultimate conclusion that the results of his evaluation are not valid, and his earlier expressed belief that Plaintiff was over endorsing her psychopathology, it was reasonable for the ALJ to find that Dr. Halmi thought Plaintiff was exaggerating her psychological signs.  In addition, because Dr. Halmi viewed Plaintiff's examination results as not valid, it was reasonable for the ALJ to reject Dr. Halmi's opinions about Plaintiff's mental-work limitations.

Substantial evidence in the record also supports the ALJ's decision to place little weight on Dr. Halmi's opinions.  The ALJ explained that most of the treatment notes for Plaintiff's mental impairments did not show more than moderate symptoms.  Substantial evidence supports this.  For example, Plaintiff's prison mental health treatment notes consistently showed no more than moderate symptoms, and did not show any serious limitation in social functioning or in concentration, persistence, or pace. (Doc. #6, *PageID* #s 335, 485, 753).  While Plaintiff claimed that she was depressed most of her life, a mental health evaluation in December 2009 reported that she denied being depressed, *id*. at 481, and she was "discharged from the case load." *Id*. at 485.  In addition, Plaintiff's many health-service requests from December 2010 to June 2011 did not identify mental-health problems or symptoms. *Id*. at 592-617, 620-28.  Assuming in Plaintiff's favor that such forms were only used to report physical health problems, Plaintiff's psychiatric treatment notes contain support the ALJ's finding of moderate symptoms.  While some notes show that Plaintiff was depressed on certain days, these notes do not identify the severity of her

mood or symptoms on those days and do not indicate that she had more than moderate symptoms over an extended period of time. *See, e.g., PageID* #774-76. Other days she was not depressed, particularly it seems, when she was taking medication. On February 2, 2011, her mood was "real good." *Id*. at 779. On February 28, 2011, her mood was "good." *Id*. at 778. On March 9, 2011, her mood was "mild-moderately dysphoric" and her affect was "sufficiently and appropriately reactive. *Id*.

Plaintiff's more recent psychiatrist treatment notes likewise provide support for the ALJ's decision that Plaintiff had no more than moderate symptoms. Plaintiff argues to the contrary by pointing to records indicating that she was hearing voices, especially on September 24, 2013. Psychiatric notes on this date indicate that she "says she has been talking with natalie cole and she i[s] going to t[a]ke her to hollywood to become a big movie star[.] client is carrying a bis [sic] suitcase with her to get ready[.] says that natalie cole helped her with her and make up this am[.]" *Id*. at 1297. These notes, however, post-dates the ALJ's written decision on August 1, 2013 and was therefore unknown to the ALJ on the date of his decision. These notes and other evidence was, however, submitted to and considered by the Appeals Council. *Id*. at 68-71. "[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Consequently, this Court cannot consider the treatment notes that post-date the ALJ's decision but were considered by the Appeals Council when it denied review. *Id*.

13

The largest step this Court could take regarding this evidence to remand the matter for further consideration in light of this evidence. However, this is warranted only when the evidence is new and material, and good cause exists for "not presenting it in the prior proceeding." *Id*. Plaintiff has not directed any argument at the issue of whether her treatment notes that post-date the ALJ's decision constitute new and material evidence. As a result, she has not met her burden of showing grounds for a remand regarding this evidence and has not provided grounds upon which this Court can consider those treatment notes as part of its substantial-evidence review. *See id*. ("the burden of showing that a remand is warranted is on the claimant.").

      The Commissioner is correct that Dr. Halmi's opinions were further contradicted by the opinions of state agency reviewing psychologists Dr. Semmelman and Dr. Rabold These psychologists opined that Plaintiff had no more than moderate impairment in any functional area. (Doc. #7, *PageID* #s 92, 126-29, 136-38). Dr. Semmelman detailed her opinions about Plaintiff's limitations supported by a well-reasoned explanation. *Id*. at 128. She believed that Plaintiff could interact occasionally and superficially, receive instructions, and ask questions appropriately in a smaller and less public to nonpublic work setting. Dr. Semmelman also found that Plaintiff could cope with ordinary and routine changes in a work setting, which is not fast paced or has strict time or production requirements. Dr. Semmelman observed that the information presented by Plaintiff and her uncle at the psychological consultative exam was inconsistent with her prison record, her

activities of daily living, and her presentation at the physical consultative exam, and was thus not credible. Drs. Semmelman and Rabold also explained that Dr. Halmi's report relied heavily on Plaintiff's subjective report, was without substantial support from other evidence of record, and overestimated the severity of Plaintiff's restrictions/limitations *Id*. at 129, 140. Given that Drs. Semmelman and Rabold's opinions were well supported by the evidence, substantial evidence supports the ALJ's decision to place more weight on their opinions about Plaintiff's mental-work limitations than on Dr. Halmi's opinions. *See Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996) ("[i]t is within the authority of the ALJ to resolve any conflicts among" physicians' opinions).

Plaintiff contends that the ALJ improperly relied on the opinions of Drs. Semmelman and Rabold because they merely reviewed part of the record. This contention lacks merit. Both opinions were based on a review of the record at the time they completed their reviews. The ALJ, moreover, considered and addressed the evidence dated after the opinions of Drs. Semmelman and Rabold. *See* Doc. #6, *PageID* #s 89-93. Given this, it was not inappropriate for the ALJ to rely on these psychologists' opinions. *See McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. 2009); *see Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996) ("[i]t is within the authority of the ALJ to resolve any conflicts among" physicians' opinions.

Plaintiff argues that the ALJ improperly considered her daily activities in discounting Dr. Halmi's opinion. It was not, however, error for the ALJ to discount Dr.

15

Halmi's opinions on this basis. Consideration of daily activities is part of the credibility assessment required by regulations. *See* 20 C.F.R. §416.945(c)(3)(i). Substantial evidence supports the finding that Plaintiff's level of daily activities was inconsistent with her alleged inability to work. *See* Doc. #6, *PageID* #s 89, 91, 259-62. The ALJ considered that although Plaintiff appeared to have some motivation issues, she was capable of performing her personal care, prepared her meals, shopped, managed money, and read "all the time." *Id*. at 89, 259-62. She testified during the ALJ's hearing that she regularly attended AA meetings and church every Sunday, and she planned to attend Bible study on Wednesdays. Plaintiff reported during her psychiatric assessment on February 15, 2012 that she was actively looking for work. *Id*. at 93, 922. The ALJ, moreover, did not base his decision primarily on Plaintiff's daily activities, but rather, he considered her daily activities in addition to several other factors such as how consistent her allegations were with the medical evidence. Thus, the ALJ did not err in considering Plaintiff's activities of daily living.

      The ALJ further noted that Plaintiff's actions did not support the claims she made at the consultative exam with Dr. Halmi. *Id*. at 93. For example, despite Plaintiff's claims of sobriety, the ALJ observed there was evidence of recent drinking in January 2013. *Id*. at 93, 1118. As noted previously, Plaintiff reported that she was actively looking for work in February 2012, which also contradicted her statements to Dr. Halmi. *Id*. at 922. The ALJ further considered Plaintiff's medical noncompliance, which contradicted Dr. Halmi's

16

opinions regarding Plaintiff's disabling impairments. *Id*. at 93, 1123. Plaintiff did not want any follow up treatment upon getting out of prison, and when she did go for treatment, she often showed moderate symptoms even though she reported medical noncompliance. *Id*.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of Dr. Halmi's opinions lack merit.

### B. Plaintiff's Remaining Contentions

Plaintiff argues that the ALJ failed adequately consider the functional determination of the Ohio Department of Job and Family Services (ODJFS). An ODJFS form completed by Bobbie Fussichen, MSW, and psychologist Franklin Haley contains a checkmark indicating their opinion that Plaintiff would be unemployable between 9 and 11 months. (Doc. #6, *PageID* #1242). By itself, this opinion was not entitled to dispositive weight to the extent it constituted an administrative finding that is reserved to the Commissioner. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2; *see also* 20 C.F.R. §§ 416.927(e)(2); 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Next, the ALJ considered this opinion and adequately explained why he discounted it. (Doc. #6, *PageID* #s 92-93). The ALJ assigned "no weight" to this opinion because it was internally inconsistent with the findings in the rest of the report that showed no more than moderate limitation in any of the 20 areas evaluated. The assessment, for instance,

states that Plaintiff has moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation, which are inconsistent with the opinion that Plaintiff was "unemployable" for 9 to 11 months.  Other checkmarks in this form indicate that Plaintiff had no significant limitations many of her mental work abilities, which tend to support the ALJ's conclusion that Plaintiff could perform "unskilled work with no more than occasional personal contacts and no production quotas" *Id*.

      Plaintiff appears to contend that the ALJ erred by not considering the fact that the opinions in the ODJFS forms stated that Plaintiff was unemployable due to both her mental and physical impairments.  (Doc. #7, *PageID#* 1321).  Plaintiff also contends that the ALJ erred by not giving serious consideration to the physical limitations indicated in these forms.  *See* Doc. #6, *PageID* # 1245-46. These contentions lack merit.  Plaintiff has not shown that the ALJ erred in relying on the opinions provided by record-reviewing sources rather the opinions set forth in the ODJFS form.  Additionally, the physician's opinion regarding Plaintiff physical-work limitations are overshadowed by her opinion in the same form that Plaintiff's "major problem to me seems to be her bipolar type behavior ...." *Id*. at 1246.  The physician equivocated somewhat by noting that she had only seen Plaintiff 2 times.  *Id*.  The ALJ, therefore, did not err by failing to seriously consider these opinions.

      Plaintiff lastly argue that the physical-work limitations set forth in the ODJFS form essentially restricted her to sedentary work.  Given this, Grid regulations would direct a

finding of disability. This is incorrect. Because Plaintiff had non-exertional limitations, the Grids did not apply and did not mandate a disability finding. *See Tobeay v. Halter*, 21 Fed App'x 309, 311 (6th Cir. 2001) (citing *Damron v. Secretary of Health and Human Servs.*, 778 F.2d 279, 281-82 (6th Cir.1985)).

Accordingly, Plaintiff's challenges related to the ODJFS opinions lack merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.


January 19, 2016

                                               s/Sharon L. Ovington
                                               Sharon L. Ovington
                                   Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).